[Crim. No. 15461. In Bank. July 8, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL JOHN HANNON, Defendant and Appellant.

**COUNSEL**

O. D. McClanahan, under appointment by the Supreme Court, for Defendant and Appellant.

Thomas C. Lynch and Evelle J. Younger, Attorneys General, William E. James, Assistant Attorney General, and Beverly K. Falk, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**MOSK, J.**—Defendant appeals from a judgment of the superior court sentencing him to state prison after his rejection by the California Youth Authority. We are called upon to construe Penal Code section 17 to determine if a juvenile offender, convicted of a crime alternatively punishable as a felony or misdemeanor, and committed to the Youth Authority, may thereafter be sentenced to state prison.

Defendant was charged with two counts of forcible rape upon a female under the age of 18 (Pen. Code, § 261, subd. 3) in November of 1967. At trial defendant withdrew his not guilty pleas and pleaded guilty to two counts of the lesser offense of violation of Penal Code section 261, subdivision 1, statutory rape. Penal Code section 264 provides, inter alia, that "when the defendant pleads guilty of an offense under subdivision 1 of Section 261 of the Penal Code the punishment shall be in the discretion of the trial court, either by imprisonment in the county jail for not more than one year or in the state prison for not more than 50 years."[1]

Because defendant was aged 20 at the time of his conviction, the trial court in February 1968 committed him to the Youth Authority "for the term prescribed by law." However, in December 1969, after serving almost two years, defendant was returned to the trial court by the Youth Authority pursuant to Welfare and Institutions Code section 1737.1.[2] At a hearing on March 31, 1970, at which defendant testified, he was denied probation and sentenced to state prison for the term prescribed by law on each count, the sentences to run concurrently. Pursuant to section 1737.1, he was given credit against his prison term for the time during which he was committed to the Youth Authority.

---

[1]In 1970, Penal Code sections 261 and 264 were amended and a new section 261.5 was added. The crime previously treated under section 261, subdivision 1, is now denominated "unlawful sexual intercourse" and is proscribed by section 261.5. Section 264, as amended, retains alternative punishment in the discretion of the court after a defendant pleads guilty to an offense under section 261.5.

[2]Section 1737.1 provides in part: "Whenever any person who has been charged with or convicted of a public offense and committed to the authority appears to the authority, either at the time of his presentation or after having become an inmate of any institution or facility subject to the jurisdiction of the authority, to be an improper person to be retained in any such institution or facility, or to be so incorrigible or so incapable of reformation under the discipline of the authority as to render his detention detrimental to the interests of the authority and the other persons committed thereto, the authority may return him to the committing court. In the case of a person convicted of a public offense, said court may then commit him to a state prison or sentence him to a county jail as provided by law for punishment of the offense of which he was convicted. The maximum term of imprisonment for a person committed to a state prison under this section shall be a period equal to the maximum term prescribed by law for the offense of which he was convicted less the period during which he was under the control of the Youth Authority."

Defendant now contends that the trial court did not have discretion to impose felony punishment upon him, the court having previously denominated his offense a misdemeanor when it committed him to the Youth Authority. He relies on Penal Code section 17, subdivision (b)(2), which provides: "(b) When a crime is punishable, in the discretion of the court, by imprisonment in the state prison or by fine or imprisonment in the county jail, it is a misdemeanor for all purposes under the following circumstances: . . . (2) When the court commits the defendant to the Youth Authority."[3]

Our task is to determine whether section 17 requires that a defendant convicted of a felony-misdemeanor offense, once committed to the Youth Authority, may only be subjected to misdemeanor punishment thereafter.

---

[3]In its entirety section 17 presently provides as follows: "(a) A felony is a crime which is punishable with death or by imprisonment in the state prison. Every other crime or public offense is a misdemeanor except those offenses that are classified as infractions. (b) When a crime is punishable, in the discretion of the court, by imprisonment in the state prison or by fine or imprisonment in the county jail, it is a misdemeanor for all purposes under the following circumstances: (1) After a judgment imposing a punishment other than imprisonment in the state prison. (2) When the court commits the defendant to the Youth Authority. (3) When the court grants probation to a defendant without imposition of sentence and at the time of granting probation, or on application of the defendant or probation officer thereafter, the court declares the offense to be a misdemeanor. (4) When the prosecuting attorney files in a court having jurisdiction over misdemeanor offenses a complaint specifying that the offense is a misdemeanor, unless the defendant at the time of his arraignment or plea objects to the offense being made a misdemeanor, in which event the complaint shall be amended to charge the felony and the case shall proceed on the felony complaint. (5) When, at or before the preliminary examination and with the consent of the prosecuting attorney and the defendant, the magistrate determines that the offense is a misdemeanor, in which event the case shall proceed as if the defendant had been arraigned on a misdemeanor complaint."

By amendment in 1969, the section was given its subdivided form and subparagraphs (4) and (5) were added. At the time of defendant's conviction, the section read as follows: "A felony is a crime which is punishable with death or by imprisonment in the state prison. Every other crime is a misdemeanor. When a crime, punishable by imprisonment in the state prison, is also punishable by fine or imprisonment in a county jail, in the discretion of the court, it shall be deemed a misdemeanor for all purposes after a judgment imposing a punishment other than imprisonment in the state prison. Where a court commits a defendant to the Youth Authority upon conviction of a crime punishable, in the discretion of the court, by imprisonment in the state prison or fine or imprisonment in a county jail, the crime shall be deemed a misdemeanor.

"Where a court grants probation to a defendant without imposition of sentence upon conviction of a crime punishable in the discretion of the court by imprisonment in the state prison or imprisonment in the county jail, the court may at the time of granting probation, or, on application of defendant or probation officer thereafter, declare the offense to be a misdemeanor."

Because the substance of the applicable provisions of section 17 was unchanged between the date of defendant's conviction and the present and because both parties have addressed themselves to the post-1969 version of the section, future references will be to the section as it now reads.

As defendant interprets section 17, commitment to the Youth Authority reduces an alternatively punishable offense to a misdemeanor in the same manner as would a sentence to the county jail.

The People contend that section 17 should be given the following construction: an alternatively punishable offense is a misdemeanor "[w]hen the court commits the defendant to the Youth Authority" and thereafter so long as such commitment continues in effect; when the term of commitment has been properly served, the classification becomes final. But when the term of commitment is terminated due to the defendant's misconduct, the misdemeanor classification no longer prevails, and the court is restored to the sentencing options it had initially. Such a construction, we are told, is consistent with the rehabilitative purposes of the Youth Authority Act as stated in Welfare and Institutions Code section 1700,[4] and denies to defendant any benefit for the misbehavior which prompted his return to the court pursuant to Welfare and Institutions Code section 1737.1.

It is plain that the literal meaning of the words used in section 17, subdivision (b)(2), comports with the construction sought by defendant. An alternatively punishable offense "is a misdemeanor for all purposes . . . [w]hen the court commits the defendant to the Youth Authority." Defendant was convicted of an alternatively punishable offense and the trial court chose to commit him to the Youth Authority. Had it desired to do so, the court could have sentenced defendant to state prison, thereby denominating his crime a felony; or the court might have granted him probation without imposing sentence and thus retained discretion to impose felony or misdemeanor punishment at a later date (see, e.g., *People* v. *Esparza* (1967) 253 Cal.App.2d 362, 364 [61 Cal.Rptr. 167]; *People* v. *Griffin* (1962) 209 Cal.App.2d 125 [25 Cal.Rptr. 667]); or the court might have sentenced defendant to a term in county jail which would have rendered his crime a misdemeanor.

The defendant having been committed to the Youth Authority, there is nothing in the language of section 17 to suggest that his offense was only conditionally denominated a misdemeanor, subject to his successful completion of his Youth Authority term. Neither subdivision (b)(2) nor any of the other subparagraphs of section 17 indicate that the classification of a crime as a misdemeanor may be conditioned upon the defendant's good

---

[4]Welfare and Institutions Code section 1700 provides: "The purpose of this chapter is to protect society more effectively by substituting for retributive punishment methods of training and treatment directed toward the correction and rehabilitation of young persons found guilty of public offenses. To this end it is the intent of the Legislature that the chapter be liberally interpreted in conformity with its declared purpose."

behavior, or subject to defeasance for later misconduct. ■ Once the trial court exercises its discretion by taking action which characterizes an alternatively punishable offense as a misdemeanor, defendant's subsequent conduct will not convert his crime to a felony and subject him to state imprisonment. Thus, for example, if a trial court had sent a minor misdemeanant to county jail for one year and the youth became a discipline problem at the institution, section 17 would provide no basis for withdrawing the misdemeanor sentence and resentencing to state prison.

■ Of course, as the People explain, a literal interpretation of a statute is not necessarily controlling and will be rejected if it leads to an absurdity. (*People* v. *Darling* (1964) 230 Cal.App.2d 615, 620 [41 Cal. Rptr. 219].) Such an absurdity exists, it is contended, when a defendant benefits by his misbehavior after commitment to the Youth Authority. The Attorney General paints a dismal picture of youthful defendants being committed to the Youth Authority, intentionally misbehaving and thus compelling their return to the trial court under section 1737.1, and then being rewarded for their misconduct by a maximum sentence of one year in the county jail.

The anti-rehabilitative impact of a literal construction of section 17 is overstated. The Youth Authority has a wide variety of means at its disposal to deal effectively with youthful offenders, and it cannot be said with accuracy that the agency is at the mercy of incorrigible minors. ■ The Authority has access to all state and private correctional facilities (Welf. & Inst. Code, § 1753), and it may even transfer problem cases to the state prisons. (See, e.g., *In re Branch* (1969) 70 Cal.2d 200, 215-217 [74 Cal.Rptr. 238, 449 P.2d 174]; *In re Keller* (1965) 232 Cal.App.2d 520, 525 [42 Cal.Rptr. 921]; *People* v. *Scherbing* (1949) 93 Cal.App.2d 736, 740-741 [209 P.2d 796].) Furthermore, the Authority may continue to hold a misdemeanant until he is 23 years old (Welf. & Inst. Code, § 1770) and thereafter apply to the trial court for two-year extensions of his detention if he is deemed a danger to the public because of physical or mental abnormality (Welf. & Inst. Code, §§ 1800-1803).[5] Thus, a 20-year-old misdemeanant who chose to reject his rehabilitative opportunities and to create disciplinary problems in Youth Authority institutions might face five years of incarceration in state prison. And, if the Authority chose to return him to the trial court under section 1737.1, he might still face a year in the county jail. Therefore, a literal interpretation of section 17 should not result in encouraging misconduct by Youth Authority inmates.

---

[5]See our recent opinion in *People* v. *Smith* (1971) *ante,* page 313 [96 Cal. Rptr. 13, 486 P.2d 1213], which invalidates the five-year extension provision in section 1802; see also *In re Gary W.* (1971) *ante,* page 296 [96 Cal.Rptr. 1, 486 P.2d 1201].

It is true that, if the Authority were to exercise its discretion under section 1737.1 every time an offender creates a disciplinary problem, a literal construction of section 17 might induce some misguided minors convicted of alternatively punishable offenses to engage in misconduct in order to limit their sentences to a maximum of one year in the county jail. However, that response certainly would not be pervasive since good behavior could produce an earlier release without any county jail sentence. Furthermore, return to the trial court pursuant to section 1737.1 is deemed to be a last resort alternative after the Authority has exhausted the other means available. (See *People* v. *Scherbing* (1949) *supra,* 93 Cal.App.2d 736, 741.) Because of the potential severity of the Authority's available disciplinary measures, most persons returned pursuant to section 1737.1 will not likely be those who intentionally misbehave in order to take advantage of a misdemeanor county jail sentence. Rather, such persons will generally be those for whom Youth Authority treatment is found to be inappropriate, and they may then be sentenced according to the nature of their offenses.

We need not rely solely upon the language of section 17 in our effort to determine the legislative purpose in its enactment; the legislative history of the section provides us an additional persuasive index. As does its language, the history of the section supports the construction for which the defendant contends.

Between 1874 and 1947, section 17 remained unchanged and its treatment of alternatively punishable offenses was the following: "When a crime, punishable by imprisonment in the State Prison, is also punishable by fine or imprisonment in a County Jail, in the discretion of the Court, it shall be deemed a misdemeanor for all purposes after a judgment imposing a punishment other than imprisonment in the State Prison." Because the section made no specific reference to Youth Authority commitment [the Youth Authority was created in 1941], the courts were permitted to decide whether such commitment after conviction of an alternatively punishable offense constituted "a judgment imposing a punishment other than imprisonment in the State Prison."

The definitive answer was provided by this court in *People* v. *Williams* (1945) 27 Cal.2d 220 [163 P.2d 692]. There it was held that commitment to the Preston School of Industry "did not involve 'penal punishment' " (*id.* at p. 231), and, therefore, a minor convicted of an alternatively punishable offense and committed to the school remained a felon and, at a later date, could be impeached as a felon. "Defendant's plea of guilty to the burglary charge in 1941 [an alternatively punishable offense], under the record, constituted proof of his conviction of a felony [citations], but

his commitment to the Preston School of Industry—unlike a county jail sentence, the alternative penal term prescribed by statute—was not 'a judgment imposing a punishment other than imprisonment in the state prison,' so that under authority of section 17 of the Penal Code it should thereafter be deemed a mere misdemeanor." (*Id.* at p. 229.)

In 1947, the Legislature enacted a complicated scheme to deal specifically with Youth Authority commitments after conviction of alternatively punishable offenses and to soften somewhat the felony treatment of such offenses. Section 17 was amended to provide: "When a crime, punishable by imprisonment in the state prison, is also punishable by fine or imprisonment in a county jail, in the discretion of the court, it shall be deemed a misdemeanor for all purposes after a judgment other than imprisonment in the state prison, unless the court commits the defendant to the California Youth Authority. Where a court commits a defendant to the California Youth Authority upon conviction of a crime punishable by imprisonment in the state prison or fine or imprisonment in a county jail, in the discretion of the court, the crime shall be deemed a felony until and unless the court, after the person committed has been discharged from control by the California Youth Authority, and only if he was not placed in a state prison by the authority during the period of such control, on application of the person so committed and discharged, makes an order determining that the crime of which he was convicted was a misdemeanor."

It should be apparent that the 1947 scheme was similar in its purpose and effect to the interpretation of the section now sought by the People. Minors committed to the Youth Authority after conviction of alternatively punishable offenses were deemed felons until they successfully completed their commitments without necessitating their transfer by the Youth Authority to the state prison system. Plainly, the legislation was seeking to encourage minors to take advantage of the rehabilitative opportunities offered them by penalizing those who created discipline problems. The only difference between the 1947 provisions and the system now advocated by the People is that the former provided for conditional felony treatment while the People now contend that section 17 provides conditional misdemeanor treatment. We point out, however, that in 1947 the Legislature precisely delineated its intention to create a system of conditional treatment of alternatively punishable offenses, while significantly no such language appears in the current version of the section.

In 1957, the Legislature deleted the provisions added in 1947 relating to commitment to the Youth Authority and in lieu thereof enacted no substitute scheme. Therefore, in *People* v. *Zaccaria* (1963) 216 Cal.App.2d 787 [31 Cal.Rptr. 383], the Court of Appeal held that a minor convicted of an alternatively punishable offense and committed to the Youth Author-

ity in 1958 was subject to the earlier construction of section 17 applied by the *Williams* court in 1945. "By repealing the [1947] amendment, . . . the Legislature simply went back to the original wording of section 17, under which the *Williams* case had been decided." (*Id.* at p. 791.)[6]

In 1959, section 17 was again amended to deal specifically with the question of Youth Authority commitment after conviction of a felony-misdemeanor: "When a crime, punishable by imprisonment in the state prison, is also punishable by fine or imprisonment in a county jail, in the discretion of the court, it shall be deemed a misdemeanor for all purposes after a judgment imposing a punishment other than imprisonment in the state prison. Where a court commits a defendant to the Youth Authority upon conviction of a crime punishable, in the discretion of the court, by imprisonment in the state prison or fine or imprisonment in a county jail, the crime shall be deemed a misdemeanor." The 1959 treatment of Youth Authority commitment has remained essentially unchanged, in both language and substance, to the present.

In light of this legislative history, the People's contention that the Legislature in section 17, as amended in 1959 and in its present version, intended a conditional treatment of Youth Authority commitment, although it stated no such conditions, is unpersuasive. The 1947 amendment constituted a system analogous to that which the People now seek, but the Legislature repealed it. We would be flaunting clear legislative intent were we to comply with the Attorney General's request to judicially reenact the rejected program. That the Legislature is capable of precisely delineating its intent in this area is manifest by the complicated system enacted in 1947 and the detailed provisions of subdivision (b)(3), (4), and (5) of the current version. Yet subdivision (b)(2) remains essentially as it was enacted in 1959—a simple statement that an alternatively punishable offense "is a misdemeanor for all purposes . . . [w]hen the court commits the defendant to the Youth Authority."

Several cases decided in the Courts of Appeal between 1959 and the present, although they did not deal directly with construction of the post-1959 version of section 17, contain language in support of a literal reading of the section. In *People* v. *Zaccaria* (1963) *supra,* 216 Cal. App.2d 787, a defendant contended he had been improperly impeached with evidence of his prior conviction of an alternatively punishable offense which had been rendered a misdemeanor by his commitment to the Youth Authority. The conviction and commitment occurred in 1958 and thus the court was required to construe section 17 according to its language as

---

[6]That *Williams* dealt with the Juvenile Court Act rather than the Youth Authority is of no significance in this context. (216 Cal.App.2d at p. 792.)

of that date. "Therefore, although the statute, by amendment in 1959, has made offenses which are punishable in the alternative manner, confinement in state prison or county jail or fine, misdemeanors where the court commits the defendant to the Youth Authority (Pen. Code, § 17), the amendment is not to be given retroactive effect [citation]." (*Id.* at p. 789.)

The defendant in *Zaccaria* asserted that the Legislature, by deleting the 1947 language in 1957, "intended to reduce alternatively punishable offenses to misdemeanors when commitment to the Youth Authority occurred, because there was eliminated the specific description of such offenses as felonies until the permitted expurgation was made. By repealing the amendment, however, the Legislature simply went back to the original wording of section 17. . . . [H]*ad the Legislature in 1957 intended to reduce all alternatively punishable crimes to misdemeanors on commitment to the Youth Authority, it would have said so. When the Legislature did decide to do so, in 1959, it expressed its purpose clearly.*" (*Id.* at pp. 791-792.) (Italics added.) Although the *Zaccaria* court found a clear expression of legislative purpose, the People would have us declare that the 1959 enactment was, in fact, a cryptic provision containing implicit, though unstated, conditions upon the misdemeanor status of alternatively punishable offenses after Youth Authority commitment.

In *People* v. *Ramsey* (1962) 202 Cal.App.2d 856, 859 [21 Cal.Rptr. 406], the Court of Appeal, in denying retroactive application to the 1959 version of section 17, stated: "It is true that section 17 of the Penal Code was amended in 1959 so that a defendant, convicted of a crime punishable in the discretion of the court by imprisonment in the state prison or by fine or imprisonment in the county jail and committed to the Youth Authority, is now guilty of a misdemeanor only. The statute, however, is not to be given a retroactive effect." Thus, that court also failed to read into the simple language of section 17 the conditional treatment which the People assert the Legislature implied.

Most recently, in *People* v. *Palacios* (1968) 261 Cal.App.2d 566 [68 Cal.Rptr. 137], the Court of Appeal read section 17 literally in rejecting a defendant's contention that the section applied to crimes punishable only as felonies, as well as to crimes punishable in the alternative. "[Defendant] contends . . . that the specific mention in section 17 of commitment to the Youth Authority as an automatic reduction to a misdemeanor in the case of a crime made punishable either by imprisonment, jail sentence or fine is not exclusive; that since no commitment to the Youth Authority is a prison sentence, a defendant committed to the Youth Authority for whatever crime, . . . has had imposed upon him a punishment other than

by imprisonment. . . . We conclude that section 17, Penal Code, does not intend to extend to persons committed to the Youth Authority for crimes punishable only by death or imprisonment the grace of an automatic reduction of such offenses to misdemeanors." (*Id.* at pp. 575, 576.)

The People rely on two cases construing Welfare and Institutions Code section 1737.1—*People* v. *Woolbert* (1965) 232 Cal.App.2d 544 [42 Cal.Rptr. 919] and *People* v. *Stevenson* (1969) 275 Cal.App.2d 645 [80 Cal.Rptr. 392]. Specifically, reliance is placed on the following language in *Woolbert* describing the effect of the Youth Authority's returning a ward to the trial court pursuant to section 1737.1: "[T]he court was by this procedure reinvested with the same power to pronounce judgment for conviction of violation of section 11532 of the Health and Safety Code [the crime of which the defendant was originally convicted and for which he had been committed to the Youth Authority] as it had in the first instance." (232 Cal.App.2d at p. 547; *People* v. *Stevenson* (1969) *supra*, 275 Cal.App.2d 651-652.) The People contend these cases are authority for the proposition that, when the trial court receives a defendant who was returned from the Youth Authority under section 1737.1 after commitment for an alternatively punishable offense, the court has the same discretion it had initially to sentence the defendant as a felon or a misdemeanant. The contention is specious.

Both *Woolbert* and *Stevenson* are distinguishable from the case at bar in one critical respect—neither involved an alternatively punishable offense. In both cases, the defendants had been convicted of straight felony offenses and committed to the Youth Authority. Naturally, upon their return to the trial court, section 17, subdivision (b)(2), imposed no limitation on the trial court's discretion to sentence them to state prison. Neither *Woolbert* nor *Stevenson* contains the slightest implication that section 1737.1 somehow supersedes section 17 so that persons convicted of alternatively punishable offenses and committed to the Youth Authority can be resentenced as felons upon their return to the trial court pursuant to section 1737.1.

■ For the foregoing reasons, we conclude that Penal Code section 17, subdivision (b)(2), precludes the imposition of felony punishment upon the defendant.[7] His commitment to the Youth Authority in 1968 denominated his offense a misdemeanor "for all purposes" and he may not now be sentenced as a felon.

---

[7]While this is a direct appeal, we realize our conclusion may induce some persons formerly committed to the Youth Authority, now serving improperly imposed state prison sentences, to seek post-conviction remedies. Should they do so, their attention is directed to the procedure described in *People* v. *Tenorio* (1970) 3 Cal.3d 89, 95-96, footnote 2 [89 Cal.Rptr. 249, 473 P.2d 993].

█ The question arises whether defendant may now be sentenced to a maximum of one year in the county jail even though he has already served almost two years with the Youth Authority. Welfare and Institutions Code section 1737.1, as amended in 1969, provides that defendants sentenced to state prison after return from the Youth Authority are entitled to credit against their prison terms for the time spent under Youth Authority control. No reference is made in the section or elsewhere to defendants returned under section 1737.1 and sentenced to county jail.

█ It would seem that credit for Youth Authority "time" is a matter of legislative concern. Thus, in both *Woolbert* and *Stevenson,* decided before the 1969 amendment of section 1737.1, defendants were returned to the trial court and sentenced to state prison without credit against their prison terms for the period spent with the Youth Authority. The Courts of Appeal held that the trial courts were reinvested with the same power to sentence the defendants on their felony convictions as the courts had prior to their commitments to the Youth Authority. █ As presently enacted, section 1737.1 provides credit only against state prison terms, and there is no reason to believe the Legislature inferentially intended the same kind of credit against county jail sentences. Since county jail terms are for a maximum of one year, a Youth Authority inmate given credit against a county jail term upon return to the trial court under section 1737.1 would be entitled to immediate release if he had been in the Authority for more than a year. Thus the return to court for sentencing would be, in effect, an idle act. The Legislature's omission of a credit provision for misdemeanor sentences suggests it did not desire such an anomalous result.

The judgment is reversed and the cause remanded to the trial court for misdemeanor sentencing in accordance with the views expressed herein.

Wright, C. J., McComb, J., Peters, J., Tobriner, J., Burke, J., and Sullivan, J., concurred.